# Somerset County Mutual Fire Insurance Company *versus* Usaw and wife.

1. Where insurance is on an occupied dwelling house, without more, there is no agreement or promise that it shall remain occupied. It is therefore no defence to an action to recover the insurance for loss of said house that it was unoccupied before and at the time of the fire, and that the assured knew it but did not notify the company of the fact.

2. A policy of insurance, stipulating that it shall be void, "if any change be made as to tenants or occupancy of the premises without the company being notified," is not rendered void by the premises being allowed to become unoccupied without notice to the company.

3. No use at all, as where the premises have become unoccupied, is not for other purposes than those for which the building was used when insured, and does not release the company from liability under the policy which provides, that if the premises be applied or used for the

[Somerset Co. Mut. Fire Ins. Co. *v.* Usaw.]

· purpose of carrying on any business which would increase the hazard, without the written consent of the company, the policy should cease and be of no force.

4. Where the defence to an action on a policy of fire insurance is that the assured burned the insured building, it is error to instruct the jury that the testimony to establish that fact must be as strong as would be required to convict the assured in a criminal court on a charge of arson.

February 12th, 1886. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas, of *Somerset county :* Of July Term, 1885, No. 187.

Assumpsit brought by John Usaw and Lydia Usaw, his wife, against the Somerset County Mutual Fire Insurance Company, November 1st, 1883, to recover the insurance on a two-story frame house, which was burned between one and two o'clock on the morning of the 13th of May, 1883.

The following facts appeared on the trial before Baer, P. J.:

The policy of insurance on which the suit was brought was issued on the 1st day of February, 1883, and insures "Dr. John Usaw and wife against loss or damage by fire, to the amount of twenty-four hundred dollars on the property described in the application which is declared to be a part of the policy." The property insured was a "two-story stone and frame house and store-room, and a stone and frame spring and ice house." A tenant occupied the property to the termination of his lease, which was on the 1st day of April, 1883, and then, after this time, the property was left unoccupied. The key to the house was sent to Usaw by the late tenant on the 2d day of April, 1883, in a registered letter, with notice that the buildings were unoccupied. It was admitted that Usaw received the registered letter containing key and notice.

About the 10th of April of the same year, Usaw was at Friedline's Mills, where the building was located, and was around and in it. He left there and went home without putting a tenant in the house, and without giving notice of this to the company.

On the night of the 11th of May, 1883, Usaw, who lived some two hundred miles away from the insured property, was seen near it. When he was seen there and asked where he was going at that late hour of night, he told him a falsehood, and left.

He explained this by saying that he had lost his pocketbook and was then on his way to search for it, and until he found it he did not care to have any one know where he was going.

2 Amerman—6

On the afternoon of the next day, the 12th of May, he was again seen around the property, heard in the house, and seen locking the front door; that night, or rather in the morning between one and two o'clock, the fire was first seen bursting through the eaves of the roof.

The property when rented only yielded from $55 to $60 rent per annum. The burnt portion of the buildings was valued by the plaintiffs, at the time of the insurance, at $3,000. Under the policy the plaintiffs are entitled to recover two thirds of the cash value of the buildings burned, at the time of the fire.

The defendants set up as one of their defences that Usaw had burned the building.

The application, which was put in evidence by the plaintiffs, set out that the premises insured were "occupied by a tenant for dwelling and store."

The policy provides "that in case the above mentioned premises shall at any time, after making, and during the time this policy would otherwise continue in force, be so altered or appropriated, applied or used, to or for the purpose of carrying on or exercising therein any trade, business or vocation, which according to the By-laws added conditions, class of hazards, or rates hereto annexed, would increase the hazard, unless it be by the consent and agreement in writing of this corporation, and indorsed upon this policy, then and from thenceforth so long as the same shall be so appropriated, applied or used, this policy shall cease, and be of no force and effect."

Article 15 of the by-laws, which are printed on the back of the policy and made a part thereof, provides: "Applications for insurance, or for any change in a policy of insurance, in all cases, may be passed upon, or approved, or rejected by two directors."

Article 19 provides that, "Whenever any alteration shall be made in any building insured which changes the class of such building, by increasing the risk, such alteration shall void the policy, unless the insured give notice to the secretary of the company, and pay a sum in addition equal to the increased hazard."

The defendant claimed that the insured building was so appropriated, applied and used, as to increase the hazard and change the class of such building, and that the evidence should have been admitted, so that this question could have been submitted to the jury.

The defendant claimed that the plaintiffs did not comply with the terms of the application, which is declared to be made a part of the policy; therefore, the policy was forfeited,

and the court should have instructed the jury as requested, to find for the defendant.

The application signed by John Usaw and Lydia Usaw declares that "if any untrue answer has been given to the foregoing interrogatories, whereby the said company have been deceived as to the character of the risk, or if any change be made as to tenants or occupancy of these premises, without being notified to this company and indorsed upon their policy, then this insurance to be void, and the policy be of no effect."

The moving out of the tenant, with notice to the plaintiffs, and the buildings remaining unoccupied until burned, covering a period of six weeks, the defendant held was a change of "occupancy of the premises," and no notice being given to the company, worked a forfeiture of the policy.

The defendant made the following offer:

"The counsel for the defendant propose to prove by John Hicks, the witness on the stand, that the plaintiffs gave no notice to the company that the property insured was left vacant for a period of six weeks; that the building was insured as a dwelling-house and store, and that by reason of the property being left unoccupied, the hazard was increased to the company; this for the purpose of showing that the acts of the plaintiffs worked a forfeiture of the policy."

Objected to, that under the policy no such notice was required, and that there was no warranty or representation that the building was to continue to be occupied as a store-house and dwelling, and the testimony is irrelevant.

Objection sustained, exception noted and a bill sealed for the defendant. (First assignment of error.)

The defendant presented *inter alia* the following points: That inasmuch as the building which was destroyed was insured as a dwelling and store-house, and was occupied at the time of the insurance, and as the uncontradicted evidence shows that said building was left vacant and unoccupied from the 1st of April, 1883, to the 13th of May, 1883, at which time the fire took place, and that no notice was given to the defendant company that the same was left unoccupied during said period, this was such a failure on the part of the plaintiffs to comply with the conditions of the application and policy as works a forfeiture thereof, and the verdict must be for the defendant.

Which point the court answered as follows:

"Answer: This we refuse; that notice was not required." (Second assignment of error.)

That if the jury believe that John Usaw either set fire to said building, or caused the same to be set on fire, then, he

being a party in interest in said policy, there can be no recovery by the plaintiffs in this case.

Answer:—If he either set it on fire himself, or had somebody else set it on fire and destroy it, then there could be no recovery here, because he is a party plaintiff, and presumably has an interest so far as the case stands here. When we say that if he burned it or had it burned, which is the same thing, there can be no recovery, we must also instruct you that the burden to prove that he burned it is on the defendant, who alleges it. Has the defendant company satisfied you by proof that John Usaw burned this property? [Before the defendant can be relieved from payment on account of the building being burned by him, it must have established the fact that John Usaw burned the house by testimony as strong as the Commonwealth would be required to produce in case John Usaw was being tried in the Criminal Court on a charge of arson for burning the house.] The plaintiff, Usaw, in this case is not required to prove that he did not burn the house ; the defendant must prove by direct or circumstantial evidence that satisfies you that he did burn it, or this ground of defence fails. It is not necessary that they should prove it by some one who saw him burn the house, because a crime may be proved by circumstantial evidence ; but these circumstances must be of such a character as to satisfy you that he was there and did it. (Third assignment of error.)

That under the pleadings and evidence in this case, the verdict must be for the defendant.

Answer:—This we refuse. (Fourth assignment of error.)

Verdict for the plaintiffs in the sum of $1,400, and judgment thereon.

The defendant moved the court to grant a new trial.

This motion the court overruled, filing the following opinion :

On close examination of the evidence, the charge and the points answered, we fail to discover material error to the injury of defendant.

If we were now charging the jury, we should eliminate from the answer to defendant's fifth point the following clause : "And before the defendant company can be relieved from payment on this account it must have established the fact that John Usaw burned the house, by testimony as strong as the Commonwealth would be required to produce in case John Usaw was being tried in the criminal courts on a charge of arson for burning the house." We find authority for so ruling in Bennet on Insurance and cases cited from New York and Maine.

But on the strength of the Con. Ins. Co. *v.* Delpeuch, 82

P. S. R., 225, we are now of opinion that the clause referred to was stronger than is held in Pennsylvania. In that case it was held that the party alleging suicide to avoid a policy must prove it; and in Wharton's Ev., 1246, it is stated that the better view now is that in civil issues the result should follow the preponderance of evidence, even though crime is imputed. The answer to the point, as a whole, did not however require that the jury should be satisfied beyond a reasonable doubt that Usaw burned the house.

We said to the jury if they found that John Usaw burned the house there can be no recovery. And after stating the degree or kind of proof required to make out the offence, we followed it by charging in the same answer that "the plaintiff, Usaw, in this case, is not required to prove that he did not burn the house. The defendant must prove by direct or circumstantial evidence that satisfies you that he did burn it, or this ground of defence fails. Not a word was said about proof beyond a reasonable doubt, but possibly the jury did, as a lawyer would, understand it in this light. But be it so—What injury has the defendant suffered by it? None whatever. The evidence in the case would not warrant a verdict in favor of the defendant on the ground that the plaintiff, Usaw, burned the house—such a finding would be against the evidence, and if rendered for the defendant, on the evidence before the jury, on the ground of plaintiffs having burned the house, it would be the manifest duty of the court to set the verdict aside. So we view the case, and hence upon due consideration the motion is overruled and new trial refused.

The defendants then took this writ assigning for error, the refusal of the offer of testimony, the refusal of the defendant's second and sixth points, and that portion of the answer to the defendant's fifth point inclosed within brackets.

*Wm. H. Koontz* and *Coffroth* (*Ruppel* with them), for plaintiff in error.—That portion of the policy which stipulates that "it is further agreed that in case the above mentioned premises should at any time, after the making, and during the time this policy would otherwise continue in force, be so altered, or appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation, which, according to the by-laws and conditions, class of hazards, or rates hereto annexed, would increase the hazard, unless it be by the consent and agreement in writing, of this corporation, added to or indorsed on this policy, then and from thenceforth so long as the same shall be so appropriated, applied or used, this policy shall cease and be of no effect," surely is broad enough to require the insured to give notice to

the Insurance Company of any matter, change or thing which would increase the hazard. To leave a dwelling house and store-room untenanted for a period of six weeks, is an increase of hazard. It is such a use of the building as is prohibited by the above stipulation in the policy, unless notice was given to the Insurance Company and indorsed on the policy.

Though an insurance policy may protect against losses, yet it will not protect against the misconduct of the party insured; and if a loss results therefrom, the owner of the property insured must bear it: Citizens' Insurance Company of Pittsburgh *v.* Marsh, 5 Wr., 394.

The question of an additional hazard is one exclusively for the jury, and of right cannot be withdrawn from the jury: Franklin Fire Insurance Company *v.* Gruver, 100 P. St. R., 273; Girard Fire and Marine Ins. Co. *v.* Stephenson, 37 P. St. R., 293; Cumberland Valley Mutual Protection Co. *v.* Schell, 29 P. St. R., 31; Lycoming Ins. Co. *v.* Updegraff, 4 Wright, 323.

II. The plaintiffs, John Usaw and Lydia Usaw, in the application they signed, and put in evidence in this case by them, expressly covenanted and agreed with the defendant company that there should be no "change made as to tenants or occupancy" of the buildings insured, without notice to the company and indorsed on their policy. If there was a change of tenants or occupancy of the buildings, without notice to the defendant company, then the policy on which suit has been brought was forfeited. The application is a part of the policy, and it was because of this warranty that the defendant company accepted the application and granted the policy of insurance. Either a change of tenants or occupancy forfeited this policy.

A policy of fire insurance was issued by defendant to the insured on "his two-story and extension frame building occupied as a dwelling." It is conceded that the house was vacant and unoccupied at the time of affecting the insurance, and so continued up to the time of the fire. This was a breach of the warranty which, according to well settled rules of law, avoided the policy: Alexandria *v.* Germania Fire Insurance Company, 66 N. Y. R., 464.

In the case of the Pottsville Mutual Fire Insurance Co. *v.* Fromm, 100 P. St. R., 351, there was in evidence a contract precisely similar to the one in the application in evidence in this case. The third condition in that policy also provided that if the building insured became vacant or tenantless for a period of fifteen days, notice must be immediately given to the secretary, and his consent obtained in writing; otherwise, the policy shall be void. Mr. Justice GREEN, who delivered

[Somerset Co. Mut. Fire Ins. Co. v. Usaw.]

the opinion of this court, says: "It is an undisputed fact that this building was vacant for nearly three years, and no notice was given to the company. We cannot escape holding the policy void, for this reason, unless we arbitrarily disregard the positive provisions of the contract. It is no reply to say that the building was vacant at the time of the application, and the agent of the company knew it, because the condition of the policy was a continuing engagement enduring through the life of the policy."

III. The defendant company, during the trial of the case, offered evidence to show that John Usaw, one of the plaintiffs, either fired the building himself, or was instrumental in having it fired.

The court instructed the jury that "before the defendant can be relieved from payment on account of the building being burned by him, it must have established the fact that John Usaw burned the house by testimony as strong as the Commonwealth would be required to produce in case John Usaw was being tried in the Criminal Court on a charge of arson for burning the house."

This we claim to be erroneous. In a civil case a preponderance of evidence is all that is required.

"It has just been said that the doctrine that a reasonable doubt of guilt is to work an acquittal does not apply to civil issues. . . . . . In civil issues the result should follow the preponderance of evidence, even though the result imputes crime": Wharton's Law of Evidence, sec. 1246; Continental Insurance Company v. Delpeuch, 1 Norris, 235; Shank v. The United Brethren Mutual Aid Society, 84 P. St. R., 388.

*Valentine Hay,* for defendants in error.—Allowing the premises to become unoccupied without notifying the company did not render the policy void: Cumberland Mutual Protection Co. v. Douglas et al., 8 P. F. S., 419; Frisbee v. Fayette M. Ins. Co., 3 Casey, 328; McAnally v. Somerset County M. Ins. Co., 2 Pitts. R., 190.

A rule of construction that may properly be invoked here is that that construction shall be taken which is most beneficial to the assured. Mr. Justice CLARK, in the case of the Teutonia Ins. Co. v. Mund to use of Biddle, 6 Out., 89, in speaking of this rule, says it is "perhaps especially applicable to the construction of policies of insurance, the provisions and conditions prepared by the insurers themselves or when the words are without violence, susceptible of two interpretations, that which will sustain his claim and cover his loss must in preference be adopted." In support of this rule he cites Western Ins. Co. v. Cropper *et al.*, 8 C. 351; Com. Ins. Co.

*v.* Boyer *et al.*, 6 Wright, 292; Ins. Co. *v.* O'Malley, 1 N., 400, etc.

The third specification of error is to the following portion of the charge: "Before the defendant can be relieved from payment on account of the building being burned by him, it must have established the fact that John Usaw burned the house by testimony as strong as the commonwealth would be required to produce in case John Usaw was being tried in the criminal court on a charge of arson for burning the house."

In Bennet on Insurance, Volume 1, page 131–8, and cases there cited, the law is so held. But the learned Judge in his opinion overruling the motion for a new trial, referring to the Continental Insurance Co. *v.* Delpeuch, 1 N., 225, says, in substance, that that portion of his charge, taken by itself, demanded more rigid proof than the case just cited requires, but, he says, the answer to the point as a whole does not, however, require that the jury should be satisfied beyond a reasonable doubt that Usaw burned the building. And the charge must be taken as a whole.

In the case of the Continental Insurance Co., *ut supra*, Mr. Justice MERCUR held that the party alleging suicide must prove it. And then referring to the evidence offered to prove it, he says: "It did not tend to prove the crime alleged. It was therefore properly withheld from the jury. If the rejection was an immaterial error, working no injury to the plaintiff in error, it is no ground for reversal: Hulings *v.* Guthrie, 4 Barr, 123."

In the case of Elkins *v.* McKean, 29 S., 493, the defendants were charged with having wilfully sold highly inflammable and explosive oil, and Chief Justice AGNEW says: "Proof which sustains the fact of guilty knowledge should be clear in proportion to the great wrong thus charged against one who may be innocent."

In an action of slander on a charge of perjury, to justify the charge the evidence must be as strong and clear as would be required to convict were the party on trial for the crime. Why this principle should not be applied to insurance cases where the charge of arson against the assured is set up as a defence, we cannot see.

Mr. Justice TRUNKEY delivered the opinion of the court, March 1st, 1886.

The contract of insurance was upon a dwelling-house with store-room, "occupied by a tenant for dwelling and store," and contained a stipulation that "if any change be made as to tenants or occupancy of these premises, without being notified to this company, and indorsed upon their policy, then this in-

surance to be void." It was also agreed that if the premises " be so altered or appropriated, applied or used, to or for the purpose of carrying on or exercising therein any trade, business or vocation which, according to the by-laws, added conditions, class of hazards or rates hereto annexed, would increase the hazard, unless it be by the consent and agreement in writing of this corporation, then and from thenceforth so long as the same shall be so appropriated, applied or used, this policy shall cease and be of no force."

At the time of the fire, and for six weeks previous, the premises were unoccupied. There was no alteration or change of use after the date of the insurance. Perhaps the risk was increased when the house became tenantless, but it was not agreed that the policy should cease when use or occupancy of the premises ceased. When the tenant moved out there was no change made by the carrying on of any trade, business or vocation on the premises. Nor was there any change as to tenants or occupancy. No condition or provision is in the policy relative to the premises being occupied. Where the insurance is on an occupied dwelling-house, without more, there is no agreement or promise that it shall remain occupied. " It is vain to argue that no use at all is a use for other purposes than those for which the building was used when insured." The policy did not bind the assured to any use, further than that when used it should be only as a dwelling-house and store. Insurance Co. *v.* Douglas, 58 Pa. St., 419.

This policy contains neither warranty nor condition that the premises should be occupied, unless upon notice the assurer should consent to their becoming vacant. Hence the ruling in Insurance Co. *v.* Fromm, 100 Pa. St., 347, does not apply to this case, for in that, a condition of the policy was: " Any building, insured by this policy, becoming vacant or tenantless for a period of fifteen days, notice must be immediately given to the secretary, and his consent obtained thereto in writing, otherwise the policy shall be void."

The first and second assignments are not sustained.

Respecting one ground of defence the jury were instructed that the testimony to establish the fact that John Usaw burned the house must be as strong as would be required to convict him in a criminal court on a charge of arson. That we think was error, and for that only must the judgment be reversed.

The doctrine that a reasonable doubt of guilt is to work an acquittal, does not apply in civil issues; in these, the result should follow the preponderance of evidence, even though the result imputes a crime: Wharton's Law of Ev., § 1246. In reference to this rule thus stated, text-books and adjudications

differ, and it would be difficult to ascertain on which side is the greater number. Many of them, for and against, are cited by Dr. Wharton, and we are content to refer to them, without a profitless review, or a reiteration of reasons leading to the conclusion adopted.

In a civil issue, the life or liberty of the person whose act is sought to be proved is not involved, proof of the act is only pertinent because it is to sustain or defeat a claim for damages or respecting the right of things. When the act imputes a crime, the inculpatory evidence must be sufficient to overcome the exculpatory evidence and the presumption of innocence, otherwise there is no preponderance to establish the fact. That presumption is due every man in every court, and when it is alleged that he has done a dishonest or criminal act, the presumption weighs in his favor. In the civil issue he is not on trial. The judgment is not evidence that he is guilty of crime. The act affirmed is an incident, a fact, to be proved like other pertinent facts. For instance, in this case, had the insured changed the tenancy or occupancy of the premises, without notice to the assurer, proof of the act would have been competent, and the fact established by preponderance of evidence. If a man, by deceit, fraudulently obtains insurance on a building, by like evidence his act may be established to avoid the policy; if he burns the insured building, the same rule of evidence ought to apply when it is proposed to prove the act for like purpose.

When considering the motion for a new trial, the learned judge of the Common Pleas became satisfied that he had misinstructed the jury as to the strength of evidence required, and thought the rule in Pennsylvania is indicated in Continental Ins. Co. *v.* Delpeuch, 82 Pa. St. 225, where it is said: " The mere fact of death in an unknown manner creates no legal presumption of suicide. Upon evenly-balanced testimony the law assumes innocence rather than crime. Preponderating evidence is necessary to establish the latter." But he held that the error was immaterial, for the reason that the evidence would not warrant a finding that John Usaw burned the house. That was not his view of the evidence at the trial, nor of the able counsel for the plaintiff.

A glance at the testimony, without comment, reveals there was no mistake in submitting it to the jury. The house was insured for $2,300, and rented for $60 per annum. It was unoccupied, was fired by an incendiary, and the fire was first observed a little after midnight on Sunday morning. Usaw was then living at Harrisburg, but came into the neighborhood a few days before the fire. One witness met and conversed with him near the house about nine o'clock on Friday

[Tissue v. Baltimore and Ohio R. R. Co.]

evening, when he said he was going to Morgan's; he did not go then. Some time after the fire he told the same witness that he did not tell the truth that night, and then spoke of the loss of his pocket-book. Two witnesses saw him at the house on Saturday afternoon ; one of the two heard some person in the house, and after the fire Usaw tried to persuade him that he had heard no one in the house that afternoon. Between four and five o'clock on Saturday afternoon he passed the toll-gate and inquired of the keeper the way to Johnstown, and went the way as directed. The next morning, Sunday, between seven and eight o'clock, the keeper of the same toll gate saw him pass, going in the same direction as he went on the afternoon before, but he did not speak.

Concede that the exculpatory evidence was strong, and, if believed, established an *alibi*, still the question of fact was for the jury.

　　　　　Judgment reversed, and *venire facias de novo* awarded.