Elinor M. RATAY, Appellant,

v.

The LINCOLN NATIONAL LIFE
INSURANCE COMPANY.

No. 17267.

United States Court of Appeals
Third Circuit.

Argued Nov. 22, 1968.

Decided Dec. 31, 1968.

Samuel J. Goldstein, Pittsburgh, Pa., for appellant.

Alexander Black, Buchanan, Ingersoll, Rodweald, Kyle & Buerger, Pittsburgh, Pa. (Clayton A. Sweeney, Pittsburgh, Pa., on the brief), for appellee.

Before GANEY, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, *Circuit Judge*:

Plaintiff appeals from a judgment entered against her in the district court without trial after we had reversed an earlier judgment for defendant and directed that a new trial be granted. Ratay v. Lincoln National Life Insurance Co., 378 F.2d 209 (3 Cir.), cert denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). The appeal deals with the procedure on remand and the quality of evidence required in Pennsylvania where fraud is alleged.

Plaintiff is the beneficiary under a contract between her husband and defendant insurance company insuring the life of her husband. She brought a diversity action governed by Pennsylvania law in the district court which entered judgment in favor of the company after a trial in which a jury returned answers to special interrogatories. On plaintiff's appeal we rejected her contention that she was entitled to judgment in her favor, but awarded her a new trial because the district court had erred in its charge to the jury on the degree of proof by which the company was required to establish its claim that the insured had obtained the insurance fraudulently by giving false answers to questions regarding the present state of his health and his medical history. The district judge had charged the jury that the burden was on the company to prove the elements of fraud by a "fair preponderance of the credible evidence". We held that the burden was on the company to prove the fraud by evidence which was "clear, precise and indubitable" and that the error was a fundamental one which required a new trial even though no proper objection was made. Ratay v. Lincoln National Life Insurance Co., supra. Our opinion was filed on May 16, 1967, and we denied the company's petition for rehearing by the court en banc on June 15, 1967. The Supreme Court of the United States denied certiorari on December 4, 1967.

A few days after the receipt of our mandate in the district court the company filed with it "a motion for an order regarding a new trial". It claimed that on November 14, 1967, four months after our decision, the Supreme Court of Pennsylvania had ruled in Greenberg v. Aetna Insurance Co., 427 Pa. 494, 235 A.2d 582 (1967), that an instruction that fraud need be proven only by a fair preponderance of the evidence was correct under Pennsylvania law and that on the retrial of this case the district court would be required to repeat its earlier charge.

The district court, agreeing with these views, ordered the proceedings stayed, and certified pursuant to 28 U.S.C. § 1292(b) that its order involved a controlling question of law as to which there was substantial ground for difference of opinion and that an immediate appeal from its order might materially advance the ultimate determination of the litigation. The order also directed that if an application for appeal under § 1292(b) was not made within ten days final judgment should be entered for the company. We denied an application for leave to appeal because the order had merely certified the case for appeal without making an authoritative disposition of the controversy. We directed, however, that our denial of leave to appeal should be "without prejudice to the right of the trial court to enter whatever dispositive

order is in its judgment mandated by authoritative judicial decision." Thereupon the district court entered an order directing the entry of judgment in favor of the company. It is from the judgment thus entered that the present appeal has been taken.

The principle upon which the district court relied would indeed require it to apply on retrial the changed Pennsylvania law, notwithstanding our determination to the contrary at a previous stage of the same proceeding. United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801); Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327 (1941); Lennig v. New York Life Ins. Co., 130 F.2d 580, 581 (3 Cir. 1942). In the *Vandenbark* case the Supreme Court said:

> "While not insensible to possible complications, we are of the view that, until such time as a case is no longer *sub judice*, the duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court. Any other conclusion would but perpetuate the confusion and injustices arising from inconsistent federal and state interpretations of state law." (p. 543, 61 S.Ct. p. 350.)

■ This principle, however, is but the recognition of a necessary exception to the general requirement that a trial court must comply strictly with the mandate directed to it by the reviewing court.[1] The exception must be confined within its appropriate limits. It is only where there has been clear-cut change in the state law after the federal appellate decision, which clearly compels a different conclusion, that a federal trial court may disregard the mandate it has received. The regular flow of state court decisions on the subject matter of a diversity case does not authorize a general

re-examination of a federal appellate court's decision on remand. The appellate decision ordinarily marks the end of a stage of the dispute by declaring the law of the case and does not serve as a threshold for fresh contention on the law. A later state court decision which merely applies settled principles to new factual circumstances and is not a declaration of a new and overruling legal principle may not be exploited as a springboard for repetition of the argument which had been unsuccessfully made on appeal. Such a state court decision may in some cases clarify the unsuccessful party's position and even supply it added strength, but so long as it does not amount to a clear pronouncement that the state law rule is different from what had been declared by the federal appellate court, the district court must carry out the mandate.

■ In the *Lennig* case where we recognized the right of a trial court to depart from the strict command of our mandate in the exceptional situation where a subsequent decision of the state supreme court had altered the law we had followed, we made it plain that the change in state law must be clearly apparent from the state court decision. We there found that the later Pennsylvania Supreme Court decision on which the trial court had relied in not following our mandate did not lay down a rule different from what we had taken to be the law of Pennsylvania and we therefore reversed the trial court's judgment. Judge Jones speaking for the Court said:

> "If, as the learned trial judge apprehended, the later decision [of the Pennsylvania Supreme Court] * * * interpreted the law of Pennsylvania differently than we had perceived it to be in our earlier opinion, then the court below was quite right in applying to the retrial of this case the rule if and as made plain subsequently by binding state court decision. This is necessarily so. The duty rest-

---

1. Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948); Noel v. United Aircraft Corp.,

359 F.2d 671, 674 (3 Cir. 1966). See also Commonwealth v. Tick, Inc., 431 Pa. 420, 425–426, 246 A.2d 424 (1968).

ing upon a federal court, in appropriate circumstances, is to ascertain and apply local law and not to make it. But, where a federal court of appeals in a given case has ascertained and applied what it apprehends to be the pertinent state law, such ascertainment of the local law is binding upon the trial court at the retrial of the case unless it is clearly made to appear by subsequent statute, no more than declaratory, or by binding state court decision that the law of the state was other than what the federal appellate court had understood it to be." [2]

The question, therefore, is whether, as the district court thought, the *Greenberg* case announced a new rule of Pennsylvania law which precluded it from applying our prior decision on the retrial.

In *Greenberg*, a fire insurance company defended its insured's claim for a fire loss on the ground that the fire resulted from incendiarism in which the insured had participated. The insured conceded that the fire was incendiary, but denied any knowledge of the arson. In his charge the trial judge instructed the jury that the burden was on the company to establish "by evidence that is clear, precise and indubitable" its allegation that the insured had instigated the fire in order to defraud the company through the presentation of a false claim. The Supreme Court of Pennsylvania reversed a judgement for the insured on the ground that too heavy a burden of proof had been placed on the company. It held that in a civil action for recovery on a fire insurance policy the defense of arson, even though imputing a crime to the insured, need only be established by a fair preponderance of the evidence.

Mr. Justice Eagen, speaking for a unanimous Court, said: "This was the rule adopted in Pennsylvania nearly a century ago in a case where, like here, recovery was sought on a fire insurance policy and the defense of arson was pleaded to defeat the claim. * * * The same rule has been followed consistently in our courts in similar cases ever since." 427 Pa. at 496, 235 A.2d at 584.[3]

The decision in *Greenberg*, therefore, did not announce a new principle of law in Pennsylvania, nor did it reject the rule we had followed on the prior appeal in this case. It merely reiterated the long established principle in Pennsylvania that the party having the burden of proof in a civil case need carry it only by a fair preponderance of the evidence even though the conduct at issue is criminal in nature and on a criminal trial could have been established only by proof beyond a reasonable doubt. See 9 Wigmore, Evidence, § 2498 (3d ed. 1940). It applied that principle to a defense of fraud on an insurance claim and declared that the defendant's burden of proof in such a case was not increased beyond proof by a preponderance of the evidence. *Greenberg* specifically recognized the distinction between fraud in the making of a contract and a fraudulent claim of loss under the contract.[4] It reaffirmed the principle that where fraud is asserted to cancel or rescind a contract it must be established not merely by a preponderance of the evidence, but by proof which is "clear, precise and indubitable". The Court said: "[I]n cases involving an attempt to set aside or to reform a written instrument on the ground of fraud, it has been held that the fraud must be estab-

---

2. Lennig v. New York Life Ins. Co., 130 F.2d 580, 581 (3 Cir. 1942).

3. See also Somerset County Mutual Fire Ins. Co. v. Usaw, 112 Pa. 80, 89, 4 A. 355, 357 (1886) ; Bobereski v. Insurance Co. of Penn., 105 Pa.Super. 585, 595, 161 A. 412, 415 (1932) ; Ruttenberg v. Fire Ass'n of Phila. and Aetna Ins. Co., 122 Pa.Super. 363, 366, 186 A. 194, 195 (1936).

4. Although the company claimed that the insured's participation in the arson and his concealment of his conduct vitiated the contract under its terms, this did not alter the essential nature of the defense, which was that the insured could not recover on his claim under a valid policy because of the fraudulent nature of his claim of loss and not because of a fraudulent making of the contract.

lished by evidence that is 'clear, precise and convincing.'[5] [Citing cases.][6] These cases, involving the validity of the execution of the instruments sued upon, are concerned in large part with the application of the parol evidence rule and therefore are distinguishable from the present case. The effort to bring the instant case within the orbit of these decisions is not supported by precedent and is not accepted." 427 Pa. at 497, 235 A.2d at 584.

*Greenberg,* therefore, in effect reaffirms the rule of Pennsylvania law which we applied on the prior appeal. Indeed, it recognizes the prejudicial effect on a defendant of the employment of the higher standard of proof and thereby indicates, as we held, that in Pennsylvania the difference between the two standards of proof is a matter of substantial significance and not a mere verbal variation. See 427 Pa. at 499, 235 A.2d at 584.

■ The company seeks to escape the application of the rule requiring a higher degree of proof of fraud by the contention that the fraud here claimed is limited to Part Two of the application containing the alleged fraudulent statements, which was completed on August 28, 1963, when the insured underwent a medical examination, subsequent to the issuance of the receipt of August 14, 1963, which bound the company as insurer.

We held that coverage became effective under the binding receipt, although subject to a condition subsequent which reserved to the company the right to terminate coverage if it determined that the insured was not in good health at the time of his application. This liability was preliminary to the ultimate contract, and nowhere did we indicate that Part Two was not to be deemed an integral part of the complete contract of insurance. Moreover, the documents themselves make it clear that Parts One and Two of the application, with the receipt, form part of one entire contract.[7]

■ The company also argues that it is entitled to judgment in its favor on the record of the original trial regardless of which standard of proof of fraud is applied. It thus asks us in effect to declare now that our original decision was erroneous, for in determining that a new trial should be held we impliedly determined that the company was not entitled to a directed verdict on the fraud issue. That determination is the law of the case and is binding on this record.[8]

Accordingly, our decision on the prior appeal must be followed, and our present mandate will require a new trial in which our prior decision will be carried out.

The judgment will be reversed and a new trial ordered.

5. A variant form of the rule speaks of evidence which is "clear, precise and indubitable".

6. See also Highmont Music Corp. v. J. M. Hoffmann Co., 397 Pa. 345, 350, 155 A. 2d 363, 366 (1959); New York Life Ins. Co. v. Brandwene, 316 Pa. 218, 221, 172 A. 669, 670 (1934); Campdon v. Continental Assurance Co., 305 Pa. 253, 258, 157 A. 464, 466 (1931).

7. Part One of the application draws Part Two into it by the following provisions: "[T]his application [consists] * * * of Parts One and Two. * * *" "This application and any policy or policies issued in consequence thereof shall constitute the entire contract of insurance. * * *" The conditional receipt is a detachable portion of Part One of the application.

8. E.g., Insurance Group Committee v. Denver and Rio Grande Western Railroad Co., 329 U.S. 607, 612 (1947); Messenger v. Anderson, 225 U.S. 436, 444 (1912). See generally 1b Moore, Federal Practice, ¶ 0.404 (2d ed. 1965).